[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14138

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2012
JOHN LEY
CLERK

D. C. Docket No. 4:11-cv-00135-HLM

JESSE E. BRANNEN, III, P.C.,
JESSE E. BRANNEN, III, et al.,

                                                        Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 7, 2012)

Before WILSON, ANDERSON and HIGGINBOTHAM,* Circuit Judges.

ANDERSON, Circuit Judge:

    Jesse Brannen, III, P.C., and Jesse Brannen, III, (collectively "Brannen"),

_____

    * Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

appeal the dismissal of their complaint contending that the Department of the Treasury lacked statutory authority to promulgate regulations imposing a user fee. Specifically, Brannen challenged the Department's regulation's requirement that compensated tax return preparers obtain a Preparer Tax Identification Number ("PTIN") and its imposition of an annual fee for that number.

## I. FACTS AND PROCEDURAL BACKGROUND

Jesse Brannen is an attorney and certified public accountant in Georgia who prepares tax returns and refund claims for others for compensation. In 2010, in accordance with the new Treasury regulation, Brannen filed for and paid $64.25 to receive a PTIN. He then filed for a refund with the IRS, but it was rejected.

Brannen then filed this lawsuit as a purported class action. Brannen's complaint asserted that the Department's implementation of the fee exceeded its statutory authorization. Brannen argues that, while 26 U.S.C. § 6109 authorizes the issuance of an identifying number, it does not authorize a fee. The Government moved for dismissal of the complaint, and the court below granted its motion, holding that Brannen failed to set forth a viable claim.

## II. DISCUSSION

Brannen's sole argument is that the Department of the Treasury exceeded its statutory authority when it began charging fees for issuing and renewing PTINs.

2

He contends that no statute enacted by Congress has provided the Department with that power. According to Brannen, 26 U.S.C. § 6109 provides for PTINs to help the Department identify taxpayers and tax return preparers, and thus helps the Department in its tax collection efforts. He insists that merely issuing a PTIN to a tax return preparer is not enough to justify charging a user fee.

Under the Independent Offices Authorities Act, 31 U.S.C. § 9701, agencies are permitted to promulgate regulations that establish a charge for a service or thing of value that the agency provides. Those charges are required to be:

(1) fair; and
(2) based on--
    (A) the costs to the Government;
    (B) the value of the service or thing to the recipient;
    (C) public policy or interest served; and
    (D) other relevant facts.

31 U.S.C. § 9701(b). Interpreting this statute's predecessor, the Supreme Court in National Cable Television Association, Inc. v. United States, 415 U.S. 336, 94 S. Ct. 1146 (1974), clarified that the Act permitted agencies to levy fees based on services rendered but not levy taxes, which is the exclusive domain of the legislature. Elaborating on this holding, the Court in Federal Power Commission v. New England Power Co., 415 U.S. 345, 94 S. Ct. 1151 (1974), held that the citizen or company must receive a "special benefit" that is not received by the general

3

public in order to justify the fee. There, the plaintiff utility companies challenged annual assessments the Commission imposed, which were intended to "recoup some of the remaining costs" incurred by the agency. Id. at 346, 94 S. Ct. at 1153. However, the Commission had described its regulatory activities as beneficial to consumers and added that its actions

> "redounded to the benefit of both industries by creating the economic climate for greater usage of the services of the regulated companies which in turn have further strengthened their financial stability and their ability to sell debt and equity securities required for capital additions to meet ever-increasing demands."

Id. at 348, 94 S. Ct. at 1153 (quoting the Federal Power Commission Report, Order No. 427, 45 FPC 440, 445 (1971)). The Court noted that the Office of Management and Budget had issued a circular instructing that a reasonable charge "'should be made to each identifiable recipient for a measurable unit or amount of Government service or property from which he derives a special benefit.'" Id. at 349, 94 S. Ct. at 1154 (quoting Budget Circular No. A-25, Sept. 23, 1959)).[1] The circular also stated that no charge should be made for services when "'the ultimate beneficiary is obscure and the service can be primarily considered as benefitting broadly the general public.'" Id. at 350, 94 S. Ct. at 1154 (quoting Budget Circular

---

[1] We note that Brannen has not challenged the amount or excessiveness of the user fee. Indeed, Brannen expressly disclaimed any such argument in the district court. District Court order, Docket No. 15 at 22 n.3.

4

No. A-25). Thus, because the Commission identified the public as the primary

beneficiary of the services, and not the utilities who paid the assessments, the fees

were not permitted by the fee-authorizing statute. Id. at 351, 94 S. Ct. at 1155.

Since 1976, the Department has had the power to require tax return preparers

to include an identifying number on the returns they prepare.

26 U.S.C. § 6109(a)(4). Before the 2010 regulations, tax preparers were permitted

by § 6109(d) to use either their social security numbers or obtain a free PTIN;[2]

however, in that same subsection, Congress expressly provided that the Secretary

could by regulation require that a number other than the social security number be

used. 26 U.S.C. § 6109(d).[3] The Department promulgated such regulations in

2010, exercising this § 6109(d) authority and requiring that tax return preparers

obtain and use a PTIN, rather than allowing use of a social security number. The

same regulation exercised for the first time the Secretary's authority under 31

U.S.C. § 9701 to charge an annual user fee to tax return preparers in exchange for

---

[2]     Although the Secretary has long had statutory authority under 31 U.S.C. § 9701 to charge a user fee so long as it is in exchange for a "special benefit" as described in New England Power, such a fee was not promulgated until the 2010 regulation.

[3]     Section 6109(d) provides:
Use of social security account number.--The social security account number issued to an individual for purposes of section 205(c)(2)(A) of the Social Security Act shall, except as shall otherwise be specified under regulations of the Secretary, be used as the identifying number for such individual for purposes of this title.

issuing the PTIN.  26 C.F.R. § 1.6109-2(a), (d).[4]

Thus, contrary to Brannen's argument, 31 U.S.C. § 9701 and 26 U.S.C. § 6109 provide statutory authority for the 2010 regulations.  Section 6109(a)(4) provides:

> (a) Supplying of identifying numbers.--When required by regulations prescribed by the Secretary:
>
> . . .
>
> > (4) Furnishing identifying number of tax return preparer.--Any return or claim for refund prepared by a tax return preparer shall bear such identifying number for securing proper identification of such preparer, his employer, or both, as may be prescribed.

26 U.S.C. § 6109(a)(4).  This statutory provision does two things.  First, it expressly grants authority to the Secretary to prescribe by regulation the particular identifying number required – that is, "such identifying number . . . as may be prescribed [by the Secretary by regulation]."[5]  Second, § 6109(a)(4) also requires that "any return . . . prepared by a tax return preparer shall bear such identifying

---

[4]    The pertinent part of the regulations reads:
Beginning after December 31, 2010, all tax return preparers must have a preparer tax identification number or other prescribed identifying number that was applied for and received at the time and in the manner, including the payment of a user fee, as may be prescribed by the Internal Revenue Service in forms, instructions, or other appropriate guidance.
26 C.F.R. § 1.6109-2(d).

[5]    This authority in the Secretary to prescribe the particular identifying number is reinforced by § 6109(d), discussed above, pursuant to which the Secretary is given specific authority to prescribe by regulation that the social security number of tax return preparers not be used.

number" as has been assigned to him/her by the Secretary. Because the term "tax return preparer" is defined by 26 U.S.C. § 7701(a)(36) as meaning any person who prepares tax returns for others for compensation, this requirement – that any return prepared by a tax return preparer bear his/her assigned identifying number – means that a tax return preparer cannot prepare tax returns for others for compensation without having the required identifying number.[6] And because § 6109(a)(4) expressly authorizes the Secretary to assign such numbers, a person cannot prepare tax returns for another for compensation unless that person obtains from the Secretary the required identifying number. For this reason, when the Secretary assigns the identifying number (the preparer tax identification number or "PTIN"), the Secretary is conferring a special benefit upon the recipient, i.e., the privilege of preparing tax returns for others for compensation.

We readily conclude that, under the plain language of § 6109(a)(4), the PTIN is issued to tax return preparers for a special benefit. And we readily conclude that the benefit – the privilege of preparing tax returns for others for compensation – is the kind of "special benefit" that qualifies under New England Power. The user fee

_____

[6] For this reason, and because, as noted above and in the preceding footnote, Brannen cannot use his own social security number, Brannen's repeated, though conclusory, assertion that he can prepare returns for others for compensation without the Secretary's PTIN is wholly without merit.

here clearly confers a benefit which is not received by the general public.

Our conclusion is reinforced by the explanation provided when the Secretary proposed the challenged regulations. When the Department proposed the regulations, it explained that:

> Individuals who obtain a PTIN receive the ability to prepare all or substantially all of a tax return or claim for refund. The ability to prepare all or substantially all of a tax return or claim for refund is a special benefit.

75 Fed. Reg. 43,110, 43,112 (July 23, 2010). It further explained that the costs to be recovered were for

> the development and maintenance of the IRS information technology system that interfaces with the vendor; the development and maintenance of internal applications; IRS customer service support activities, which include development and maintenance of an IRS Web site and call center staffing; and personnel, administrative, and management support needed to evaluate and address tax compliance issues, investigate and address conduct and suitability issues, and otherwise support and enforce the programs that require individuals to apply for or renew a PTIN.

Id.[7]

Brannen also argues that the imposition of a fee after none had been charged

---

[7] The Government also points out that tax return preparers receive the special benefit of not having to use their social security numbers, which use could potentially compromise the number's confidentiality. Additionally, the use of a single PTIN for each tax return preparer facilitates identification of each preparer by the IRS and allows the agency to forward preparers targeted updates of particular relevance to the type of clients the preparer serves.

previously violates the statute. We disagree. Brannen has cited nothing to support this argument, and we see nothing in the language of § 9701 that suggests that the authority to charge a user fee must be exercised at the first moment that Congress confers the authority. We know of no tradition of statutory construction that would indicate such an unusual interpretation. Nor is there anything in the language of § 9701, nor in logic, that would prohibit an agency from implementing a fee for services that it had previously provided for free. Moreover, as the above-mentioned explanations accompanying the proposed regulations suggest, the Department apparently contemplated enhanced services for tax return preparers upon the implementation of the regulations and the fee.

## III. CONCLUSION

To summarize, 31 U.S.C. § 9701 provides authority to impose a user fee so long as the agency confers a special benefit. And 26 U.S.C. § 6109(a)(4) and (d) expressly provide authority for the Secretary to require that tax return preparers use the PTIN assigned by the Department, i.e., a number other than the preparer's social security number. And § 6109(a)(4) expressly provides that any return prepared by a tax return preparer shall bear the number assigned by the Department, meaning that a tax return preparer cannot prepare returns for others for compensation without such number. Because in exchange for the user fee the

Department assigns a PTIN and confers a special benefit upon tax return preparers (i.e., they are thus privileged to prepare returns for others for compensation), we hold that the Department's user fee complies with § 9701.[8]  Accordingly, we affirm the decision of the district court.[9]

AFFIRMED.

---

[8]      Brannen's suggestion that the general public may also benefit from the increased efficiency of the Department's collection efforts does not undermine our holding.  Even assuming there is some such general benefit, it is clear that the assignment of a PTIN to a tax preparer, and the resulting privilege to prepare returns for others for compensation, qualifies as a special benefit "'above and beyond those which accrue to the public at large.'"  New England Power, 415 U.S. at 349 n.3, 94 S. Ct. at 1154 n.3 (quoting from Budget Circular No. A-25). Indeed, in the same footnote, the Court also quoted with approval the Circular's example of a special benefit: "'e.g. receiving a . . . license to carry on a specific business.'"  Id.; see also Nat'l Cable Television Ass'n, 415 U.S. at 340, 94 S. Ct. at 1149 (giving as an example of a permissible user fee a "fee . . . incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law").

[9]      In light of our disposition on the basis of the plain language of the statutory provisions, we need not address whether the Department may also have had authority to promulgate the challenged regulations on the basis of a general licensing authority.